**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax:    (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

BRIANN BRAFFORD; H.D.B.; and F.J.B.,

Plaintiffs,

vs.

STATE OF CALIFORNIA (by and through California Highway Patrol); MICHAEL BOLAN; and DOES 2-10, inclusive,

Defendants.

Case No. 2:24-cv-03405-DC-SCRx

[*Honorable Dena M. Coggins*]
Mag. Judge Hon. Sean C. Riordan

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

[Separate Statement of Genuine Disputes and Additional Material Facts; Objections to Defendants Separate Statement; Declaration of Marcel F. Sincich and attached exhibits; Declaration of Richard S. Bryce*; filed concurrently herewith*]

Hearing:    May 15, 2026
Time:       01:30 p.m.
Crtrm:      10

Case No.: 2:24-cv-03405-DC-SCRx

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.    INTRODUCTION ................................................................................................................ 1

II.   STATEMENT OF RELEVANT FACTS ............................................................................. 2

    A.    NATURE OF THE CRIME AT ISSUE ................................................................... 2

    B.    OFFICER BOLAN'S PRE-SHOOTING TACTICS ............................................. 3

    C.    OFFICER BOLAN INTENTIONALLY USED DEADLY FORCE ........................... 3

    D.    BRAFFORD WAS NOT AN IMMEDIATE THREAT OF DEATH OF SERIOUS BODILY INJURY ................................................................................................... 4

III.  LEGAL STANDARD UNDER RULE 56 ............................................................................ 4

IV.   OFFICER BOLAN USED EXCESSIVE FORCE BY SHOOTING THE SLOW-MOVING NONTHREATENING BRAFFORD FROM OVER 10 FEET AWAY WITHOUT WARNING WHILE LESS-LETHAL OPTIONS WERE AVAILABLE ......... 6

    A.    THE NATURE AND QUALITY OF THE INTRUSION—DEADLY FORCE—IS UNPARALLELED AND WAS UNNECESSARY ................................................. 6

    B.    GOVERNMENT INTEREST WEIGH IN FAVOR OF FINDING THAT OFFICER BOLAN'S USE OF DEADLY FORCE WAS EXCESSIVE ....................................... 7

    C.    OFFICER BOLAN IS NOT ENTITLED TO QUALIFIED IMMUNITY ................. 11

V.    PLAINTIFFS' DENIAL OF FAMILIAL RELATIONSHIP CLAIM SURVIVES ........... 19

VI.   PLAINTIFFS' STATE LAW CLAIMS SURVIVE BECAUSE THE USE OF DEADLY FORCE WAS UNREASONABLE ..................................................................... 20

VII.  CONCLUSION .................................................................................................................. 23

## TABLE OF AUTHORITIES

Cases

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970) ...............................................................................................5

*Aguirre v. Cnty. of Riverside*,
29 F.4th 624 (9th Cir. 2022)............................................................................10, 12

*Anderson v. Creighton*,
483 U.S. 635 (1987) ...............................................................................................5

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 249 (1986) .......................................................................................4

*Ashcroft v. al–Kidd*,
563 U.S. 731 (2011) .............................................................................................13

*Blankenhorn v. City of Orange*,
485 F.3d 463 (9th Cir. 2007).............................................................................6, 22

*Brosseau v. Haugen*,
543 U.S. 194 (2004) ...................................................................................5, 12, 13

*Bryan v. MacPherson*,
630 F.3d 805 (9th Cir. 2010)............................................................................6, 9, 11

*Bui v. San Francisco*,
61 F. Supp. 3d 877 (N.D. Cal. 2014) ..................................................................13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................4, 5

*City & Cnty. of San Francisco, Calif. v. Sheehan*,
575 U.S. 600 (2015) .............................................................................................18

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009).............................................................................21

*Crawford v. City of Bakersfield*,
944 F.3d 1070 (9th Cir. 2019)..............................................................................10

*Cunningham v. City of Wenatchee*,
345 F.3d 802 (9th Cir. 2003).................................................................................12

*Curnow v. Ridgecrest Police*,
952 F.2d 321 (9th Cir. 1991).................................................................................11

*Davis v. City of Las Vegas*,
478 F.3d 1048 (9th Cir. 2007)...............................................................................10

*Deorle v. Rutherford*,
272 F.3d 1272 (9th Cir. 2001)..........................................................................7, 9, 11

*Drummond v. City of Anaheim*,
343 F.3d 1052 (9th Cir. 2003).................................................................................7

*Espinosa v. City & Cnty. of San Fran.*,
598 F.3d 528 (9th Cir. 2010).................................................................................11

*Garlick v. Cnty. of Kern*,
167 F. Supp. 3d 1117 (E.D. Cal. 2016).................................................................20

*George v. Morris*,
736 F.3d 829 (9th Cir. 2013) ................................................................. 9, 11

*Glenn v. Washington Cnty.*,
673 F.3d 864 (9th Cir. 2011) .................................................................. passim

*Gonzalez v. City of Anaheim*,
747 F.3d 789 (9th Cir. 2014) ........................................................................ 5

*Graham v. Connor*,
490 U.S. 386 (1989) ...................................................................................... 6

*Gravelet–Blondin v. Shelton*,
728 F.3d 1086 (9th Cir. 2013) ..................................................................... 13

*Green v. City and Cty. of San Francisco*,
751 F.3d 1039 (9th Cir. 2014) ..................................................................... 10

*Greer v. City of Hayward*,
229 F. Supp. 3d 1091 (N.D. Cal. 2017) ....................................................... 20

*Harris v. Roderick*,
126 F.3d 1189 (9th Cir. 1997) ....................................................................... 9

*Hart v. City of Redwood City*,
99 F.4th 543 (9th Cir. 2024) ........................................................................ 18

*Hayes v. Cnty. of San Diego*,
736. F.3d 1223 (9th Cir. 2013) ......................................................... 12, 19, 21

*Hopkins v. Andaya*,
958 F.2d 881 (9th Cir. 1992) ......................................................................... 5

*Isayeva v. Sacramento Sheriff's Dep't*,
872 F.3d 938 (9th Cir. 2017) ......................................................................... 7

*Johnson v. Bay Area Rapid Transit Dist.*,
724 F.3d 1159 (9th Cir. 2013) ..................................................................... 21

*Johnson v. Jones*,
515 U.S. 304 (1995) ..................................................................................... 11

*Kisela v. Hughes*,
138 S.Ct. 1148 (2018) .................................................................................. 17

*Knox v. Southwest Airlines*,
124 F.3d 1103 (9th Cir. 1997) ..................................................................... 12

*Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*,
841 F.2d 872 (9th Cir. 1987) ......................................................................... 5

*Landeros v. City of Tustin*,
837 F.3d 1005 (9th Cir. 2016) .................................................................... 7, 8

*Lopez v. Gelhaus*,
871 F.3d 998 (9th Cir. 2017) ............................................................. 8, 9, 10

*Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ...................................................................................... 5

*Munoz v. City of Union City*,
120 Cal.App.4th 1077 (2004) ...................................................................... 21

*N.E.M. v. City of Salinas*,
761 F. App'x 698 (9th Cir. 2019) ........................................................... 11, 13

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Napouk v. Las Vegas Metropolitan Police Department,*
    123 F.4th 906 (9th Cir. 2024)................................................................... 14, 18

*Nelson v. City of Davis,*
    685 F.3d 867 (9th Cir. 2012)................................................................... 7

*Nicholson v. City of Los Angeles,*
    935 F.3d 685 (9th Cir. 2019)................................................................... 20

*Porter v. Osborn,*
    546 F.3d 1131 (9th Cir. 2008)................................................................. 19

*Reese v. Cnty. of Sacramento,*
    888 F.3d 1030 (9th Cir. 2018)................................................................. 18

*S.B. v. Cnty. of San Diego,*
    864 F.3d 1010 (9th Cir. 2017)................................................................. 16, 17

*S.R. Nehad v. Browder,*
    929 F.3d 1125 (9th Cir. 2019)................................................... 6, 7, 13, 19

*Santos v. Gates,*
    287 F.3d 846 (9th Cir. 2002)................................................................. 6, 12

*Scott v. Harris,*
    550 U.S. 372 (2007) ............................................................................ 5

*Scott v. Smith,*
    109 F.4th 1215 (9th Cir. 2024)............................................................... 20

*Singh v. City of Phoenix,*
    124 F.4th 746 (9th Cir. 2024)................................................................. 13, 14

*Smith v. City of Hemet,*
    394 F.3d 689 (9th Cir. 2005)................................................................. 7, 10

*Tabares v. City of Huntington Beach,*
    988 F.3d 1119 (9th Cir. 2021)................................................................. 10, 21

*Tennessee v. Garner,*
    471 U.S. 1 (1985) ............................................................................... 6, 7, 8

*Tennison v. City and Cnty. of San Francisco,*
    570 F.3d 1078 (9th Cir. 2009)................................................................. 19

*Torres v. City of Madera,*
    648 F.3d 1119 (9th Cir. 2011)................................................................. 8

*Velazquez v. City of Long Beach,*
    793 F.3d 1010 (9th Cir. 2015)................................................................. 6

*Vos v. City of Newport Beach,*
    892 F.3d 1024 (9th Cir. 2018)................................................... 6, 11, 14, 15

*Wilkins v. City of Oakland,*
    350 F.3d 949 (9th Cir. 2003)................................................................. 5, 12

*Wilkinson v. Torres,*
    610 F.3d 546 (9th Cir. 2010)................................................................. 19

Statutes

California Penal Code §835a.................................................................... 20, 21, 22

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

<u>Other Authorities</u>

Judicial Council of California Civil Jury Instructions, No. 1305B .....................20, 22
Judicial Council of California Civil Jury Instructions, No. 441 ..........................20, 22

<u>Rules</u>

Federal Rules of Civil Procedure, Rule 56 ...................................................................4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

This civil rights action arises from the excessive and unreasonable officer-involved shooting death of Travis Brafford ("Brafford") caused by Defendant California Highway Patrol Officer Michael Bolan ("Bolan"), on September 17, 2022. After responding to a misdemeanor hit and run vehicle accident, Defendant Bolan located and approached Brafford, who did not fit the description of the reported driver of the accident, who was outside of the Jeep that did not display damage consistent with the reported accident, in a parking lot. Without reasonable suspicion, Officer Bolan escalated the situation by putting his hands on Brafford. After the situation escalated, Brafford was reported to have retrieved a knife from a gym bag and began walking towards Bolan. Officer Bolan should have immediately called for backup, but he failed to. Bolan chose to engage with Brafford alone then overreacted and use excessive and unreasonable deadly force.

Here, Brafford never verbally threatened anyone; never attempted to harm anyone; never attempted to punch, kick, or tackle anyone; never attempted to attack, throw, stab, or even lift the knife up in a threatening manner toward anyone; merely kept the small, 3inch blade knife down by his side; never ran, lunged, charged, or moved fast towards anyone; never attempted to evade detention by flight; was walking slowly; and was over 10 feet away when Bolan opened fire. Brafford was not an immediate threat of death or serious bodily injury. On the other hand, Bolan had room to maneuver but choose not to; had cover available but chose not to use it; had less-lethal options available but chose not to use them; had backup available but chose not to call them; and had time to give a verbal warning but chose not to. Despite all the evidence known to Bolan at the time that Brafford was not an immediate threat of death or serious bodily injury, Bolan overreacted after stumbling on a planter and intentionally fired two rounds into Brafford's chest, killing him. Under Plaintiffs' facts and all reasonable inferences therefrom, a jury could find that Bolan's use of deadly force was unnecessary, excessive, and unreasonable.

Defendants' Motion seeks summary judgment on Plaintiffs' five remaining claims: excessive force; denial of familial relationship; battery; negligence; and violation of the Bane Act. (Docs. 13, 31, 32.) Defendants' Motion must fail because Bolan used excessive and unreasonable

-1-  Case No.: 2:24-cv-03405-DC-SCRx

deadly force in violation of clearly established law and because there are disputed issues of material fact. Fed. R. Civ. Pro. 56. When the record is viewed in the light most favorable to the nonmoving party, a jury could find that the slow walking, no-furtive moving, from over 10" away, Brafford was not an immediate threat of death or serious bodily injury and find that Bolan used excessive and unreasonable force.

Thus, Defendants' Summary Judgment and qualified immunity should be denied in full.

## II. STATEMENT OF RELEVANT FACTS

### A. Nature of the Crime at Issue

By reasonable inference, the car accident was not serious. After observing the rear end of Ms. Smith's vehicle, Officer Bolan did not see any damage that really stood out in his mind, only that she could not "close her hatch" but the car was still drivable. (Plaintiffs' Additional Undisputed Facts ("PAUF") 1.) Bolan classified the incident as a misdemeanor hit-and-run with property damage only. (PAUF 2.) By reasonable inference, Ms. Smith was not injured. Officer Bolan did not see any injuries to Ms. Smith and she declined medical assistance. (PAUF 3.) Neither the victim nor the witness was able to provide a license plate. (PAUF 4.) When Bolan located a Jeep at Applebee's, he did not have reasonable suspicion to detain Brafford. (PAUF 5-6.) The victim and the witness also said that the vehicle was smoking when it fled, but the Jeep did not have any smoke coming from it. (PAUF 7.) Bolan did not know what the victim saw and what the witness saw and believed that their stories "probably got diluted because one was talking to the other." (PAUF 8.) The only information Bolan had regarding the driver was that it was a bald male and that there may be two occupants in the Jeep. (PAUF 9.) When Officer Bolan made contact with Brafford, Bolan observed that Brafford did not fit the description of the driver because Brafford was not bald, and Bolan did not know if Brafford was the passenger of the Jeep. (PAUF 10.) Further, Bolan never asked Brafford if he had anything to drink. (PAUF 11.) Even though Bolan did not have reasonable suspicion to stop Brafford, when Brafford attempted to walk away, Bolan escalated the situation by putting his hand on Brafford. (PAUF 1.) Brafford did not swipe Bolan's hands away when Bolan put his hand on Brafford's chest, instead Brafford put his hands up and stepped back. (PAUF 13.) Brafford never attempted to flee. (PAUF 14.)

-2-                    Case No.: 2:24-cv-03405-DC-SCRx

### B.    Officer Bolan's Pre-Shooting Tactics

In determining if deadly force reasonably appears necessary, officers are trained that they shall evaluate each situation and if reasonably safe and feasible to do so, officers shall use other available resources and techniques. (PAUF 15.) Here, there were reasonable and available resources and techniques that Bolan could have utilized rather than escalating the situation and using deadly force but failed to do so, including calling for backup, using cover and distance, using and creating time, tactical communication and de-escalation, appropriate warnings, and use of less lethal force. (PAUF 16.) Bolan failed to formulate a plan; failed to request backup; and was armed with a Taser that could de-escalate or subdue Brafford but failed to use it. (PAUF 17-23.) Bolan never considered tactically handcuffing Brafford and waiting for backup to arrive. (PAUF 24.) Bolan stated that he walked backwards for approximately 75 feet in an encounter that lasted approximately 30 seconds. (PAUF 25.) Yet, Bolan never gave a verbal warning and did not even give a command between hitting the curb and firing his shots. (PAUF 26.) Finally, Bolan had room to maneuver and had cover available but chose not to use it. (PAUF 27.)

### C.    Officer Bolan Intentionally Used Deadly Force

Officers are trained that deadly force can only be used if there is an imminent threat of death or serious bodily injury. (PAUF 28.) "Imminent threat" means that the person must have the ability, opportunity, and apparent intent to immediately cause death or serious bodily injury. (PAUF 29.) Fear of future harm, no matter how great the fear and no matter how likely the harm, is insufficient to use deadly force, it must be instantly confronted. (PAUF 30.) "Totality of the Circumstances" as taught to police officers, means all facts known to Bolan at the time, including Bolan's conduct leading up to the use of deadly force. (PAUF 31.) Officers must justify every shot. (PAUF 32.) In his attempt, Bolan states that he fired his weapon because he believed Brafford "closed the distance, and [] was an immediate threat to [his] safety" (PAUF 33) not an immediate threat of death or serious bodily injury. Bolan "tried to be" situationally aware but failed to be aware that he walked backwards into a curb. (PAUF 34.) When Bolan stepped into the planter, he lost balance and stumbled. (PAUF 35.) Only then did Bolan fire two shots from his semi-automatic handgun, striking Brafford twice in the chest. (PAUF 36.) Brafford fell forward on his knees onto the parking

-3-    Case No.: 2:24-cv-03405-DC-SCRx

lot, not in the planter, then to his side and Bolan pulled Brafford to lay him flat. (PAUF 37-38.) Bolan was not injured related to this incident. (PAUF 39.)

### D. Brafford Was Not An Immediate Threat of Death of Serious Bodily Injury

Officer Bolan was 6 foot and 190 pounds with 15 years of experience as a CHP officer. (PAUF 40.) Bolan had never seen Brafford before and knew nothing about his background. (PAUF 41.) However, Bolan understood that the Jeep was clear of wants and warrants. (PAUF 42.) Bolan knew Brafford had a head injury with a welt and dried blood on Brafford's head. (PAUF 43.) Brafford never verbally threatened to harm Bolan. (PAUF 44.) Brafford never attempted to punch, kick, or tackle Bolan. (PAUF 45.) Brafford never attempted to attack Bolan with the knife, never charged at Bolan, never raised the knife up, and never tried to stab Bolan with the knife. (PAUF 46.) Brafford never raised the knife up to his chest or shoulder or over his head, never attempted to throw the knife, and never made a stabbing motion towards Bolan. (PAUF 47.) The knife was down by Brafford's side in a natural walking motion, including when the shots were fired. (PAUF 48.) Bolan never attempted to take cover, despite cover being available. (PAUF 49.) Brafford did not close the distance on Bolan, instead Bolan chose to maintain the distance between him and Brafford instead of increasing the distance. (PAUF 50.) The videos show that Brafford was not running or moving fast towards Bolan but instead was moving slowly and appeared to slow down in the moments prior to the use of deadly force. (PAUF 51.) Still, Bolan continued backwards as he stumbled into the planter. (PAUF 52.) Additionally, there was over 10 feet between Bolan and Brafford when Bolan used deadly force. (PAUF 53.)

## III. LEGAL STANDARD UNDER RULE 56

Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Defendants cannot meet their burden. At summary judgment, a court's function is not to weigh the evidence, make credibility determinations, or determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In ruling on summary judgment, courts

must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir. 1987). A fact is "material" if its proof or disproof is essential to an element of plaintiff's case. *Celotex Corp.*, 477 U.S. at 322-23. A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Even entirely circumstantial evidence is sufficient to create a triable issue of fact. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992). Further, the reasonableness of an officer's belief "is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law.'" *Brosseau v. Haugen*, 543 U.S. 194, 206 (2004) (Stevens J., dissenting); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003).

The undisputed facts that Brafford was moving slowly from over 10 feet away, with the knife down by his side and not threatening or furtive movement, while Bolan had available cover and less-lethal alternatives, precludes summary judgment. Additionally, in a deadly force case such as this, where Brafford cannot testify, the Court must carefully examine all evidence in the record to determine whether the officer's story is internally consistent and consistent with known facts. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794-95 (9th Cir. 2014). The Court must also examine circumstantial evidence that, if believed, would tend to discredit the police officer's story, all to "ensure that the officer[s] [are] not taking advantage of the fact that the witness most likely to contradict [their] story—the person shot dead—is unable to testify." *Id.*; *see Brosseau*, 543 U.S. at 206 (Stevens J., dissenting) (the reasonableness of an officer's belief "...is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law'..."); *Anderson*, 483 U.S. at 641; *Wilkins*, 350 F.3d at 956. Which is exactly the case here.

Finally, where there is video of the use of excessive force, the Court must view the facts depicted by the videotape in the light most favorable to the nonmovant so long as it is not blatantly contradicted by the record. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007); *Vos v. City of Newport*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

*Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018). Even where video evidence exists, the circumstances may be such that reasonable factfinders could draw divergent conclusions from what the video evidence shows. *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1132-39 (9th Cir. 2019) (disputed issues of material fact precluded summary judgment in an action alleging excessive use of force even though the evidence included surveillance footage).

## IV. OFFICER BOLAN USED EXCESSIVE FORCE BY SHOOTING THE SLOW-MOVING NONTHREATENING BRAFFORD FROM OVER 10 FEET AWAY WITHOUT WARNING WHILE LESS-LETHAL OPTIONS WERE AVAILABLE

Defendant Bolan's use of excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "Underlying *Graham's* objective-reasonableness test is the clear principle that the force used to make an arrest must be balanced against the need for force: it is the need for force which is at the heart of the *Graham* factors." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015) (*citing Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007)). The Court must carefully balance "the nature of the harm and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010) (*quoting Graham*, 490 U.S. at 396); *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) ("Force is excessive when it is greater than is reasonable under the circumstances.").

### A. The Nature and Quality of the Intrusion—Deadly Force—Is Unparalleled and Was Unnecessary

The nature and quality of the intrusion here cannot be understated—Bolan used deadly force against Brafford. *Tennessee v. Garner*, 471 U.S. 1, 9 (1985) (deadly force intrusiveness is unmatched). "The use of deadly force implicates the highest level of Fourth Amendment interests both because the suspect has a 'fundamental interest in his own life' and because such force 'frustrates the interest of the individual, and of society, in judicial determination of guilt and

punishment.'" *Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016) (quoting *Garner*, 471 U.S. at 9). Bolan used the highest level of force against Brafford, which is "extreme" and should only be used in limited circumstances. *Id.* at 1011. The only dispute is whether the governmental interests at stake were sufficient to justify Bolan's extreme amount of force.

**B.     Government Interest Weigh in Favor of Finding that Officer Bolan's use of Deadly Force Was Excessive**

The use of deadly force must be balanced against the purported need for it. *See Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946-47 (9th Cir. 2017). Government interest factors to balance against the type of force used include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396, (4) the availability of alternative methods to effectuate an arrest or overcome resistance, *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005), (5) the giving of a warning prior to the use of force, *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012), and (6) whether it should have been apparent to officers that the person they used force against was emotionally disturbed, *see Glenn v. Washington Cnty.*, 673 F.3d 864, 872 (9th Cir. 2011); *see also Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001).

The Ninth Circuit has cautioned that "[b]ecause such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [it has] held on many occasions that summary judgment…in excessive force cases should be granted sparingly." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003). Further, it reaffirmed that "summary judgment is not appropriate in §1983 deadly force cases that turn on the officer's credibility that is genuinely in doubt." *Nehad*, 929 F.3d at 1133 (noting genuine doubts about officer credibility regarding perceptions as compared to other evidence). No government interests under *Graham* and its progeny support the use of such extreme force here.

<u>*No immediate threat of death to officers*</u>: This Court's analysis should start with the most important *Graham* factor – whether the subject posed an immediate threat to the safety of officers or others. *Smith*, 394 F.3d at 702. "Deadly force is permissible only 'if the suspect threatens the

-7-                    Case No.: 2:24-cv-03405-DC-SCRx

officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm.'" *Landeros*, 837 F.3d at 1011 (quoting *Garner*, 471 U.S. at 11). In other words, the use of deadly force is only permissible in the most limited circumstances—when necessary to prevent the immediate threat of death or serious bodily injury. *Garner*, 471 U.S. at 3; Cal. Pen. Code §835a.

Viewing the facts and all reasonable inferences in the light most favorable to Plaintiffs, Brafford did not pose an immediate threat of death or serious bodily injury to any person at the time of the shooting. Brafford was alone; moving slowly; did not display any assaultive behavior; did not make a furtive movement with the knife; did not verbally threaten anyone; did not harm anyone; did not attempt to strike anyone; and was not attempting to flee. (PAUF 41-53.) *See Lopez v. Gelhaus*, 871 F.3d 998, 1008 (9th Cir. 2017). Bolan was not facing a situation where somebody was in immediate danger. Bolan had distance, time, and space to get cover, maneuver, call for backup, create more distance and time, give a warning, and use less-lethal alternatives, but chose not to. (PAUF 15-27.)

An officer's actions are not judged with the 20/20 vision of hindsight, but nevertheless, not all errors in perception or judgment are reasonable. *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). Bolan claims he shot Brafford because he was closing the distance and was about 6 feet away at the time of the shots. (Motion at 3:26-4:2.) This claim is rebutted by the evidence showing that Brafford was more than 10 feet away from Bolan, slowed down when Bolan stumbled on the curb, and was only at that distance because of Bolan's physical limitations and because Bolan choose to slow down to maintain the distance instead of increase the distance when he saw Brafford slow down. The only circumstance that changed in the 30 seconds prior to the shots was Bolan having a lack of situational awareness and stumbling on the curb. Bolan only fired after stumbling on the curb. But for Bolan's bias, limitations, failed tactics, lack of awareness, and use of excessive force, Brafford may be alive today. These disputed issues of material fact must be decided by a jury. Bolan overreacted in using unnecessary deadly force because he stumbled on the curb not because of Brafford's conduct. "A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone,

-8-    Case No.: 2:24-cv-03405-DC-SCRx

justifies the use of force that may cause serious injury." *Bryan*, 630 F.3d at 826. It was incumbent on Bolan to control his emotions not to use deadly force unnecessarily. Finally, the fact that a suspect has a deadly weapon does not render the use of deadly force reasonable. *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013); *Glenn*, 673 F.3d at 872-73; *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997) ("officials may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed.").

Viewing the video evidence in the light most favorable to Plaintiffs, Brafford was moving slowly and non-threatening over 10 feet away at the time of the shots. There are no objective factors to justify Bolan's claim that Brafford was an immediate threat of death or serious bodily injury. *See Deorle*, 272 F.3d at 1281 ("a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern."); *Lopez*, 871 F.3d at 1008-10 (finding the armed subject's position and movement immediately prior to the shooting did not support a reasonable belief of a threat). Accepting Plaintiffs' version of the facts, Brafford did not present an immediate threat of death or serious bodily harm to anyone when he was shot.

*Seriousness of crime*: Bolan was responding to a misdemeanor traffic accident call, did not have a description of the driver, and did not see Brafford in the driver's seat of the Jeep. This is not an issue of a serious or violent crime in progress and Bolan did not even have reasonable suspicion to detain Brafford. Further, Bolan did not have any information that Brafford had harmed anyone or attempted to harm anyone. This factor clearly does not support the use of deadly force. For example, in *Deorle*, the plaintiff "brandish[ed] a hatchet" and a crossbow and was verbally abusive to officers, threatening to "kick [their] ass." 272 F.3d at 1276-77. He also continually roamed about his property despite officers' orders. *Id*. Nevertheless, the Ninth Circuit did not consider this sufficient active resistance to warrant use of the beanbag shotgun, noting that "the crime being committed, if any, was minor." *Id.* at 1282-85. Thus, this factor weighs in favor of finding that Bolan' use of deadly force was excessive. *Id.* at 1283 (governmental interest in using deadly force is diminished when person was not committing a serious crime).

*Not attempting to flee*: It is undisputed by video evidence that Brafford was not attempting to evade arrest by flight. Brafford never ran or fled from Bolan. *See Lopez*, 871 F.3d at 1006-07

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

(9th Cir. 2017). Defendant argues the opposite. This factor also weighs in Plaintiffs' favor.

*Available alternatives*: Defendant Bolan ignored numerous less-intrusive alternatives, such as continuing to use verbal commands, maneuvering to gain more distance and time, and the use of less-lethal options. *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007) (quoting *Smith*, 394 F.3d at 701) ("[c]ourts may also consider 'the availability of alternative methods of capturing or subduing a suspect.'"). Use of deadly force could have been avoided had Bolan used allowed the utilization of appropriate tactics and less-intrusive alternatives prior to using deadly force. However, instead of allowing the less-lethal force to have its effect and assessing its effectiveness, Bolan ignored the several less-lethal options and escalated the situation by resorting to deadly force. *See Glenn*, 673 F.3d at 872; *Green v. City and Cty. of San Francisco*, 751 F.3d 1039, 1051 (9th Cir. 2014). This factor also weighs in Plaintiffs' favor.

*No warning given*: Before using deadly force, officers must issue a warning when feasible. *Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022). Here it is undisputed that Bolan failed to give a warning to Brafford that if he did not stop walking towards him or drop the knife that he would be shot and potentially killed. It is further undisputable that there was amble time and opportunity to give a warning prior to the use of deadly force. *See Lopez*, 871 F.3d at 1007. Bolan had time to recognize every step that Brafford took as well as his background but chose to use unnecessary deadly force in haste. An officer's excuse of lack of time that he created is no justification for not giving a warning. Bolan had time to give a warning and chose not to. The force used against Brafford was unnecessary and excessive under the circumstances. Accordingly, Bolan is not entitled to summary judgment as a matter of law.

*Emotional Disturbance/Intoxication*: Lastly, Bolan recognized that Brafford may be suffering from a mental health crisis. (PAUF 54.) Whether it should have been apparent to officers that the person they used force against was emotionally disturbed." *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1126 (9th Cir. 2021) (*quoting Glenn*, 673 F.3d at 872); *see Crawford v. City of Bakersfield*, 944 F.3d 1070, 1078 (9th Cir. 2019) ("[W]hether the suspect has exhibited signs of mental illness is one of the factors the court will consider in assessing the reasonableness of the force used.") Bolan certainly considered that Brafford may be intoxicated, the symptoms for

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

which are very similar to that of a mental health crisis. But Bolan ignored Brafford's displayed symptoms and instead unreasonably escalated the situation and shot Brafford dead. The Ninth Circuit emphasized that officers should exercise "greater effort to take control of the situation through less intrusive means" when confronting mentally ill or unstable suspects. *Bryan*, 630 F.3d at 829. It was objectively unreasonable for Bolan to fail to take Brafford's emotional disturbance and intoxication into consideration when determining how to communicate, what to communicate, which tactics to employ, and whether to use deadly force. *See Deorle*, 272 F.3d at 1283 ("Even when an emotionally disturbed individual is 'acting out' and inviting officers to use deadly force to subdue him, the governmental interest in using such force is diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual."); *see also Vos*, 892 F.3d at 1034 ("Finally, it is undisputed that Vos was mentally unstable, acting out, and at times invited officers to use deadly force on him. These indications of mental illness create a genuine issue of material fact about whether the government's interest in using deadly force was diminished."). Thus, the government's interest in using deadly force here is greatly diminished. For all the reasons discussed, a jury could find that Bolan' use of deadly force was objectively unreasonable in violation of the Fourth Amendment.

### C.     Officer Bolan is Not Entitled to Qualified Immunity

Defendant Bolan is not entitled to qualified immunity for two primary reasons. First, there are disputed issues of material fact that preclude qualified immunity at this stage. Second, at the time of the shooting, "it was clearly established that officers may not use deadly force against a person who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions," especially when less-lethal options are available and potentially effective. *N.E.M. v. City of Salinas*, 761 F. App'x 698, 700 (9th Cir. 2019) (*citing George*, 736 F.3d at 838; *Curnow v. Ridgecrest Police*, 952 F.2d 321, 324-25 (9th Cir. 1991); and *Lopez*, 871 F.3d at 1020 (holding that *George* and *Curnow* clearly established this principle fifteen years ago)).

First, disputed issues of material fact preclude granting qualified immunity on summary judgment. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Glenn*, 673 F.3d at 870, fn. 7 (citing *Espinosa v. City & Cnty. of San Fran.*, 598 F.3d 528, 532 (9th Cir. 2010)); *Cunningham v. City of*

-11-                    Case No.: 2:24-cv-03405-DC-SCRx

*Wenatchee*, 345 F.3d 802, 809 (9th Cir. 2003); *Gates*, 287 F.3d at 855 n.12 (declining to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom"); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997) (no qualified immunity where there are triable issues of fact); *Brosseau*, 543 U.S. at 206 (Stevens J., dissenting) (the reasonableness of an officer's belief "…is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law…"); *Wilkins*, 350 F.3d at 956 ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate). Here, the key material factual disputes bearing on the reasonableness of Bolan's use of deadly force are: whether it was feasible for Bolan to give a warning; whether the alternative less-lethal force options were feasible and likely to be effective; whether Bolan reasonably believed Brafford was 6 feet from him; whether Brafford was closing the distance; and whether Brafford ever made a furtive, harrowing or threatening gesture that made him an immediate deadly threat.

Resolving these factual disputes in Plaintiffs' favor, the Court must assume for the purposes of summary judgment that Brafford was walking slowly, holding the knife down by his side in a non-threatening manner, over 10 feet away from Bolan, who could have used cover, and had reasonable alternatives. Further, Brafford did not commit a serious or violent crime; was not attempting to flee, run, or lunge at anyone; was not attempting to harm or strike anyone; was not attempting to slash or stab anyone; and was not given a warning. In other words, a reasonable jury can find that Brafford was obviously not making a furtive, harrowing or threatening gesture and not an immediate risk of death or serious bodily injury. Thus, the Court should find that Officer Bolan violated clearly established law. *Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022) (where the subject posed no immediate threat to the officers or others, the "'general constitutional rule' applies 'with obvious clarity'" rendering the officer's decision to shoot objectively unreasonable); *Hayes v. Cnty. of San Diego*, 736. F.3d 1223, 1233-34 (9th Cir. 2013) (reversing district court's grant of summary judgment where decedent approached officers while

armed with knife, but where decedent was not charging officers, was given no warning deadly force would be used, was not witnessed acting erratically with weapon, and where officers had no information decedent had threatened to harm anyone); *S.R. Nehad v. Browder*, 929 F.3d 1125, 1136 (9th Cir. 2019) (*citing N.E.M.*, 761 F. App'x at 699-100 (affirming denial of summary judgment to officers who shot garden shear-wielding suspect when he turned toward officers less than nine feet away, after having swung shears at officers); *Bui v. San Francisco*, 61 F. Supp. 3d 877, 897-99 (N.D. Cal. 2014) (officers not entitled to qualified immunity for shooting a suspect waving an X-Acto knife and slowly advancing towards officer.).

Second, on the date of the incident, "it was clearly established that officers may not use deadly force against a person who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions," especially when less-lethal options are available and potentially effective. *N.E.M.*, 761 F. App'x at 700. To determine whether the officer violated clearly established law, courts look to "cases relevant to the situation [Bolan] confronted," *Brosseau*, 543 U.S. at 200 (quotation marks omitted), mindful that there need not be a case "directly on point." *Gravelet–Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). Here, a jury could find that Brafford did not make any furtive, harrowing, or threatening gestures that would cause a reasonable officer to believe he was an immediate threat of death or serious bodily injury. In fact, Defendant Bolan admits the opposite. Brafford never verbally threatened anyone; never attempted to harm anyone; never attempted to punch, kick, tackle, attack, throw, stab, or even lift the knife up in a threatening manner toward anyone; merely kept the small, 3" blade knife down by his side; never ran, lunged, charged, or moved fast towards anyone; never attempted to flee; was walking slowly; and under Plaintiffs' facts was over 10 feet away when Bolan opened fire.

An instructive Ninth Circuit case is *Singh v. City of Phoenix*, 124 F.4th 746 (9th Cir. 2024). In *Singh*, officers responded to call about a suspect who had tried to rob someone with a knife and was chasing the victim in the parking lot with the knife. *Id*. at 748. However, by the time the officers got there, suspect was not chasing anyone. *Id*. The *Singh* suspect had knife to his own throat and advanced on officers, despite clear warning to stop and drop the knife or the officers

would shoot. *Id*. An officer there fired one shot. *Id*. The Ninth Circuit found the use of deadly force was not reasonable because: (1) the *Singh* suspect did not brandish knife at anyone (but rather held it to his own throat.) *Id*. at 751). Here, Brafford did not brandish knife at anyone. (2) Despite the *Singh* suspect's failure to comply with commands to drop the knife, he was not in a physical altercation with anyone, he did not threaten anyone with the knife, and did not attack the officers or threaten to attack any of them. *Id*. at 752. Here, Brafford did not get into a physical altercation with anyone, did not threaten anyone with the knife, and did not attack the officers or threaten to attack them with the knife. (3) The *Singh* suspect was indisputably not engaged in any felonious crime when officers arrived. *Id*. at 752-53. Here, Brafford was also not engaged in any crime when Bolan arrived. (4) The *Singh* suspect did not actively resist despite failure to comply with commands, just like Brafford here. *See Id*. at 753. (5) There officers were or should have been aware that suspect was emotionally disturbed, just like Brafford here. *Id*. at 754. (6) There no effective warning was given to suspect because although suspect heard and understood officers' warnings, they had no effect on him given his mental state. *Id*. at 754. Here, it is undisputed that Bolan never gave a verbal warning. And (7) there, the plaintiff's expert opined that officers could have used less-lethal options, but as here. *Id*. at 754.

The Ninth Circuit in *Singh* also distinguished *Singh* from *Napouk* instructing:

In *Napouk v. Las Vegas Metropolitan Police Department*, No. 23-15726, 123 F.4th 906 (9th Cir. Dec. 10, 2024), the decedent held a large object that appeared to the officers to be a machete, *id*. at 912, whereas here the object was a small pocketknife. In *Napouk*, the decedent moved the object around and pointed it in various directions. *Id*. at 912-14, 917-18. By contrast, here, Plaintiff held the pocketknife only to his own throat. There, the decedent continually advanced on the officers, *id*. at 913-14, 917-18, and began to move more quickly toward them while telling them to "get out of here," *id*. at 913. In this case, Plaintiff said nothing aggressive, never moved quickly, and had stopped at the time he was shot.

*Id*. at 755.

Another analogous Ninth Circuit case is *Vos v. City of Newport Beach*, where a mentally

unstable man was shot from 20 feet away while running towards eight officers with an object, believed to be scissors, raised above his head. 892 F.3d at 1033-34. The officers were responding to a 911 call reporting Vos's erratic behavior in a 7-Eleven convenience store. *Id.* at 1028. Vos, behaving violently and threateningly, threatened to take a hostage, and injured a person with scissors. *Id.* at 1129. Upon arrival, officers quickly realized Vos was potentially mentally unstable or under the influence of drugs. *Id*. at 1029. As here, "officers only suspected the possibility of substance abuse," at the time. *Id.* at 1030. They called for backup, leading to a standoff between Vos and eight officers. *Id.* at 1029-30. The officers were armed with various levels of force: one 40-mm less-lethal firearm, tasers, and lethal weapons. *Id.* at 1033. They positioned their vehicles in formation and used the doors for cover. *Id.* at 1029. Minutes later, Vos ran out and towards the officers. *Id.* at 1030. Brandishing a metal object above his head, Vos ignored the officers' commands to "Drop the weapon." *Id.* at 1029. As he ran at officers, Vos was shot first with a less-lethal round and then almost immediately with lethal shots from two officers. *Id.* at 1029. When shot, Vos was within 20 feet of the officers. *Id.* at 1033. Despite being struck, he continued to charge, ultimately collapsing in front of them. *Id*. at 1030, 1033.

On *Vos*, the Court found that a reasonable jury could conclude that the officers' use of deadly force was objectively unreasonable in violation of the Fourth Amendment. *Id*. at 1034. The analysis centered on the second *Graham* factor: whether Vos posed an immediate threat. The court considered that: the officers' position; that Vos charged the officers, he had something sharp raised in his hand, but he was not armed with a gun; and the officers had less-lethal methods available to stop Vos. The Court found, based on these factors and "construing the facts as they are presented by [Plaintiffs] and depicted in the video footage, a reasonable jury could conclude that Vos was not an immediate threat such that the use of deadly force was warranted." *Id.* at 1032. Likewise, the Court rejected the defendant's argument that deadly force was reasonable because Vos "forced the confrontation" by charging the officers. *Id.* The court found that the availability of less-lethal options was critical. *Id*. at 1033. Given that less-lethal force options were available to the officers and could have been effective in stopping Vos and ending the threat, the use of deadly force was not objectively reasonable. *Id*. at 1034; *see also Deorle*, 272 F.3d 1272 (finding beanbag

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

deployment and lethal shooting excessive where suspect was armed with a knife).

There are many significant similarities between *Vos* and the current case: Bolan was aware that Brafford may be suffering a mental health crisis; Bolan was equipped with both lethal and less-lethal weapons; despite multiple orders, Brafford maintained the knife in hand; and Brafford was shot over 10 feet away. Moreover, Brafford presented even less of a threat than Vos. Unlike Vos, who had injured a bystander with scissors, it is undisputed that Brafford had not threatened, assaulted, or injured anyone. While Vos charged the officers running, Brafford was merely walking slowly. Despite being shot from 20 feet away, Vos's rapid movement brought him to the pavement near the officers and that movement showed aggression. Finally, while Vos brandished a perceived deadly weapon above his head, Brafford held the small knife down by his side in a non-threatening manner. For these reasons, *Vos*, which was decided 4 years before this incident, put Officer Bolan on notice that it was objectively unreasonable to use deadly force.

Another analogous Ninth Circuit case is *Glenn*, 673 F.3d 864, in which a man was shot in his driveway by police officers. Police received a report of an agitated, intoxicated man carrying a knife and threatening to kill himself. When police saw him holding the knife to his own neck, they drew their guns and screamed for him to drop it. Additional officers arrived, one of whom shot the man with several beanbags causing the man to move away and toward the house in which his parents were standing. As police had determined that if the man "made a move toward the house with his parents inside, they would use deadly force," they opened fire and killed him. *Glenn*, 673 F.3d at 869. Here, as in *Glenn*, Brafford had not threatened, attacked, or injured anyone; he had not committed a serious crime; he did not evade arrest; and the failure to drop the knife may have been the result of confusion by an impaired person. Thus, as in *Glenn*, there are triable issues of fact as to whether rapidly resorting to deadly force was reasonable in light of the less-lethal force deployed. *Id.* at 879-80.

In *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1014 (9th Cir. 2017), two deputies responded to a reportedly aggressive and under the influence man who threatened his family. Three deputies, armed with non-lethal and lethal weapons, entered a house searching for Brown. Inside the house, officers found Brown with knives in his pockets. Despite Brown's erratic behavior and threats, the

-16-                    Case No.: 2:24-cv-03405-DC-SCRx

officers were able to get him to kneel, but he did not comply with orders to keep his hands up. Then Brown, six to eight feet away, grabbed a knife from his pocket. Without further warning, a deputy fatally shot him. The Ninth Circuit found that the deputy's "use of deadly force was not objectively reasonable, and therefore violated Brown's Fourth Amendment right against excessive force." *Id*. The court's ruling relied on several factors: the officer's prior knowledge of Brown's mental illness and intoxication; the immediate use of lethal force once Brown grabbed the knife; the 6-8 foot distance between Brown and the closest officer; lack of warning; and availability of less-lethal force. *Id*.

Similarly, Brafford was reported for what can be considered erratic behavior and potentially under the influence. Just like *Brown*, Brafford was confronted by Bolan who was equipped with both lethal and less-lethal weapons. But Brafford posed far less danger than Brown because: Brafford, unlike Brown, had not threatened anyone, his knife was down and not being drawn out in a threatening manner, and Brafford was more than 10 feet away from the officers— over double the distance between Brown and the officer. Thus, based on the Ninth Circuit's reasoning in *S.B.*, it can be concluded that the use of deadly force against Brafford was not objectively reasonable and violated his clearly established Fourth Amendment rights.

Defendant's reliance on *Kisela* is misplaced. First, the Supreme Court did not address the question of whether there was a constitutional violation. It decided the case based on qualified immunity, for an incident occurring in 2010, holding that it was not clearly established that it was unlawful to shoot a person armed with a knife and within striking distance of a potential victim. *Kisela v. Hughes*, 138 S.Ct. 1148, 1154 (2018). Importantly, the Court does not overturn the Ninth Circuit's determination that there was sufficient evidence to demonstrate that the shooting officer violated the Fourth Amendment. Second, the Court's reasoning in *Kisela* hinges on the fact that the plaintiff was less than six feet away from Chadwick and was "within striking distance" of her. But here it is undisputed that Brafford was not within striking distance of anyone, and the evidence shows that he was more than 10 feet away from Bolan. (PAUF 66.)

Defendant also relies on *Sheehan*, which is even less relevant here than *Kisela*. There the Court found that the use of deadly force was objectively reasonable as a matter of law when the

officers had "tried to subdue Sheehan with pepper spray, but Sheehan kept coming at the officers until she was 'only a few feet from a cornered Officer Holder.'" *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 612-13 (2015). Again, the holding in *Sheehan* is not relevant here because unlike *Sheehan*, Brafford was more than 10 feet away from Bolan and not within striking distance of anyone and importantly no less-lethal force was attempted here. (PAUF 31-35, 66.)

The Court's order in *Reese v. Cnty. of Sacramento* is not instructive here because the Court granted qualified immunity because the subject had the knife in an elevated position within striking distance of the officers when he was shot. 888 F.3d 1030, 1037-38 (9th Cir. 2018). Likewise, *Hart v. City of Redwood City* is not instructed where the Court reversed the denial of qualified immunity because the subject held the knife towards officer as he ran or moved fast towards the officers putting him in close range of the officers. 99 F.4th 543, 548-50 (9th Cir. 2024). Equally unpersuasive is *Napouk* where the Court granted summary judgment because the subject has a 22 inch long machete-looking object, advancing within 9 feet of officers. 123 F.4th at 916-18. These cases show that courts consider (a) conduct of the subject with the knife (furtive gesture); (b) distance between the subject and the officer (striking distance); and (3) the speed of movement (intent and opportunity). Here, Brafford never made any furtive or threatening movement with the knife, and never verbally threatened or attempted to harm anyone. Next, Brafford was over 10 feet from Bolan at the time of the force. Finally, Brafford was moving slowly the entire incident and appears to slow his pace prior to the shots. Thus, a jury could find that Brafford did not have the present ability, opportunity, or apparent intent to immediately cause death or serious bodily injury. Therefore, a jury could find that Brafford was not an immediate threat of death or serious bodily injury. Under Plaintiffs' facts, the law is not just clearly established, the use of deadly force here was obviously excessive.

Based on the binding Ninth Circuit precedent discussed above, it is evident that Officer Bolan is not entitled to qualified immunity under the circumstances of this case. The key material factual disputes should preclude granting qualified immunity on summary judgment as they relate directly to the reasonableness of Bolan' use of deadly force. And the precedent set by the Ninth Circuit in *Vos*, *Glenn*, *S.B.*, *George*, *Curnow*, and *Lopez*, clearly establish "that officers may not

-18-                Case No.: 2:24-cv-03405-DC-SCRx

use deadly force against a person who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions," especially when less-lethal options are available and potentially effective. *See also Nehad*, 929 F.3d at 1134 (excessive force held triable issue where suspect made no "sudden movements" or "move[d] the supposed knife," was "seventeen feet away" from police, was "walking" at "relatively slow pace," and was given no warning of lethal force); *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1227-28, 1233-35 (9th Cir. 2013) (reversing summary judgment where officers shot an emotionally disturbed individual who held a large knife pointed down and took one to two steps toward an officer still six to eight feet away).

## V.    PLAINTIFFS' DENIAL OF FAMILIAL RELATIONSHIP CLAIM SURVIVES

Defendants also argue, very briefly, that Plaintiffs' Fourteenth Amendment Claim should be dismissed because Bolan did not act with a purpose to harm. (Doc. 31, 12:2-4.) Due process violations under the Fourteenth Amendment occur when official conduct "shocks the conscience," *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010), but what that means "depends on the context." *Tennison v. City and Cnty. of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009). The deliberate indifference standard applies when the officer has time to deliberate and would satisfy a due process violation that "shocks the conscience." *Tennison*, 570 F.3d at 1089. The Court indicated that the higher standard only applies in situations "that escalate so quickly that the officer must make a snap judgment." *Porter v. Osborn*, 546 F.3d 1131, 1137-40 (9th Cir. 2008) (collecting cases). However, the "snap judgment" to use deadly force must be a reaction to an unforeseen escalation by the subject. *Hayes*, 736 F.3d at 1230.

Here, there was no "snap judgment." The encounter lasted at least 30 seconds and the events leading to the shooting happened slowly including Brafford's final steps. Further, Bolan escalated to lethal force without attempting less-lethal options, without assessing the situation or his surroundings, and without warning. Bolan displayed clear bias against suspected drunk drivers and escalated the situation without reasonable suspicion. Under these circumstances, Bolan's decision to use deadly force was clearly in reckless disregard for Brafford's life. Notably, Bolan was aware of available non-lethal alternatives but neglected to consider them. There was no unforeseen escalation by Brafford. Brafford was doing the same thing the entire time, walking

-19-                    Case No.: 2:24-cv-03405-DC-SCRx

slowly with the knife down by his side. He made no furtive gestures. If anything was unforeseen it was Bolan stumbling on the curb and then overreacting with unnecessary deadly force.

Defendant Bolan chose not to take the time and instead was deliberately indifferent by opening fire. *See*, *e.g.*, *Scott v. Smith*, 109 F.4th 1215, 1228 (9th Cir. 2024); *Nicholson v. City of Los Angeles*, 935 F.3d 685, 692-93 (9th Cir. 2019). Moreover, even though Bolan had the opportunity and time to continually assess (i.e., deliberate), he opened fire. Under these circumstances, Bolan's decision to employ deadly force was clearly in reckless disregard for Brafford's life. Notably, Bolan was aware of available less-lethal alternatives but neglected to utilize them. Finally, since there is a genuine dispute as to whether Bolan had time to deliberate, the court may be unable on summary judgment to resolve which standard applies in this case. *See Garlick v. Cnty. of Kern*, 167 F. Supp. 3d 1117, 1168 (E.D. Cal. 2016) ("In the face of genuine disputes of material fact, the Court is not compelled to find which of the standards applies as a matter of law."); *Greer v. City of Hayward*, 229 F. Supp. 3d 1091, 1108 (N.D. Cal. 2017) ("Here, there is evidence to support both standards, and the determination should be left to the jury.").

## VI.    PLAINTIFFS' STATE LAW CLAIMS SURVIVE BECAUSE THE USE OF DEADLY FORCE WAS UNREASONABLE

Regarding Plaintiffs' claims under state law battery and violation of the Bane Act, the same facts would be considered as with the Fourth Amendment excessive force claim that show that it was not necessary to use deadly force against Brafford. Both battery and negligence also have a legally distinct standard that is broader than the Fourth Amendment because it considers the totality of the circumstances including the officer's pre-shooting conduct and tactics. Further, it requires that the use of deadly force is necessary. *See* Cal. Pen. Code §835a(e); CACI Nos. 441 and 1305B.

In an officer-involved shooting case where the subject has a contact weapon in hand (one that requires the suspect to be within striking distance to cause harm), as here, in evaluating whether the subject was an immediate threat of death or serious bodily injury it is important to consider (a) conduct of the subject with the weapon; (b) distance between the subject and the officer; and (c) the speed of movement. These three have direct implications on whether the subject as the present ability, opportunity and apparent intent to immediately cause death or serious bodily injury. *See*

Cal. Pen. Code §835a. Because Brafford never made any furtive or threatening movement with the knife, was moving slowly, never verbally threatened anyone, and never attempted to harm anyone, a jury could find that Brafford did not have the apparent intent to immediately cause death or serious bodily injury. Next, because Brafford was over 10 feet from Bolan, knife down by his side, and moving slowly and appears to slow his pace prior to the shots, not running or lunging towards Bolan, a jury could find that Brafford did not have the ability or opportunity to immediately cause death or serious bodily injury. Therefore, a jury could find that Brafford was not necessary to use deadly force against Brafford pursuant to California law.

But negligence claims apply an even more forgiving standard regarding the defendants' conduct leading up to the use of force. *Hayes v. Cnty. of San Diego*, 57 Cal.4th 622, 639 (2013). Even if under the Fourth Amendment and Bane Act claims, the Court determined that the shooting appears justified in isolation, "the totality of the circumstances, including the pre-shooting conduct of the officer, might persuade a jury to find the shooting negligent. In other words, pre-shooting circumstances might show that an otherwise reasonable use of deadly force was in fact unreasonable." *Id.* at 629-30; *see also Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) ("the officer's pre-shooting decisions can render his behavior unreasonable under the totality of the circumstances, even if his use of deadly force at the moment of the shooting might be reasonable in isolation.").

Considering the disputed issues of material facts as set forth above and considering that qualified immunity does not apply to state law claims, Plaintiffs are entitled to a jury trial on all their state law claims for the reasons discussed above in connection with Plaintiffs' excessive force claim. *See Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1121, fn.6 (2004); *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013); *see also Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009). Additionally, Bolan's negligent pre-shooting tactics include failing to have an adequate tactical plan; failing to communicate with Brafford properly; failing request backup; failing to utilize available cover; failing to provide a verbal warning; failing to de-escalate the situation; and failing to attempt less intrusive alternatives all in light of him knowing he was physically limited from his prior injuries. Thus, Plaintiffs' state-law claims survive.

Defendants also argue that Officer Bolan is entitled to immunity under Government Code §820.2and Penal Code §835a, but that argument is contradicted by binding caselaw. *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007) (regarding §820.2, "it has long been established that this provision does not apply to officers who use unreasonable force in making an arrest."). Penal Code §835a clearly states that a peace officer is only justified in using deadly force if there is an imminent threat of death or serious bodily injury. Further, the Code defines "imminent" as only when a reasonable officer would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury prior to using deadly force. *Id.* at §835a(e); *see also* CACI Nos. 441 and 1305B. "An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed." *Id.*

Here, Brafford did not have the present ability or opportunity to immediately cause death or serious bodily injury because he was not within striking distance, but over 10 feet away, and was moving slowly. Brafford could not immediately cause harm to anyone at the time. Finally, Brafford did not have the apparent intent to immediately cause death or serious bodily injury because he was moving slowly, not running or lunging; held the knife down by his side, not slashing or swinging it; did not make a furtive movement with the knife; did not verbally threaten anyone; did not attempt to harm anyone; did not attempt to punch, kick, or grab anyone; and did not commit a serious or violent crime. Bolan cannot justify his use of unreasonable force with a subjective fear of future harm, no matter how great the likelihood of the harm, and no matter how great the fear. Pen. Code §835a. Thus, Defendants' motion for summary judgment should be denied in full.

/ / /

/ / /

/ / /

/ / /

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motions for Summary Judgment in full and deny Officer Bolan qualified immunity.

Respectfully Submitted,

DATED:  April 16, 2026          **LAW OFFICES OF DALE K. GALIPO**

By:   _____/s/ Marcel F. Sincich_____
          Dale K. Galipo, Esq.
          Marcel F. Sincich, Esq.
          *Attorney for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT